**JURY TRIAL DEMANDED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION**

| | | |
|---|---|---|
| **ANTOINETTE LIGGINS, individually** | ) | |
| **and on behalf of B.C., a minor** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| **VS.** | ) | **Case No. <u>4:16-cv-413</u>** |
| | ) | |
| **OFFICER MICHAEL COHEN,** | ) | |
| **Individually and in his official capacity,** | ) | |
| **and ST. LOUIS METROPOLITAN** | ) | |
| **POLICE DEPARTMENT BOARD OF** | ) | |
| **POLICE COMMISSIONERS, AND** | ) | |
| **CHIEF OF POLICE SAMUAL** | ) | |
| **DOTSON III, AND MAYOR FRANCIS** | ) | |
| **SLAY, THOMAS J. IRWIN, BETTYE** | ) | |
| **BATTHE-TURNER, RICHARD H.** | ) | |
| **GRAY AND ERWIN SWITZER,** | ) | |
| **In their official capacity, and the CITY** | ) | |
| **OF SAINT LOUIS.** | ) | |
| | ) | |
| *Defendants*. | ) | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Plaintiff Antoinette Liggins**, ("Ms. Liggins," "Plaintiff"), **for herself and on behalf of her natural son B.C., a minor**, (hereinafter referred to as "B.C.," collectively "Plaintiffs"), complaining of **Defendants Michael Cohen, individually and in his official capacity** ("Officer Cohen") **and the St. Louis Metropolitan Police Department Board of Police**

**Commissioners and the Chief of Police, Samuel Dotson, III., and Mayor Francis Slay, Thomas J. Irwin, Bettye Batthe-Turner, Richard H. Gray & Erwin Switzer, in their official capacity and the City of Saint Louis**, ("City," collectively "Defendants"), and for causes of action would respectfully show unto this Honorable Court the following:

## I.
## NATURE OF ACTION, JURISDICTION AND VENUE

1.      This civil action is brought pursuant to 42 U.S.C. §1983 against each and every of the Defendant for committing acts, under color of law, with the intent of and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States and seeking damages arising therefrom, including but not limited to a manifest violation of B.C.'s clearly established right, under the Fourth Amendment to the United States Constitution, to be free of the use of excessive force during the course of his arrest, which violation would be clear from the perspective of a reasonable police officer on the scene, viewing the objective facts surrounding B.C.'s being shot three times, resulting in the severing of his spine and severe injuries to his liver and pancreas and resulting in his permanent, partial paralysis at the tender age of sixteen.[1]

2.      This case arises under the United State Constitution, including the Bill of Rights, and 42 U.S.C.  § 1983.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiffs brings this action resulting from damages and paralysis B.C. sustained as a direct and proximate result of Defendants' actions and omissions in violation of his civil rights.

3.      Plaintiffs assert that Defendant Michael Cohen is liable for the violation of Plaintiffs' civil rights due to his use of unjustifiably excessive force in the arrest of B.C., in violation of clearly

---

[1] *See Johnson v. Carroll,* 658 F.3d 819, 826 (8th Cir. 2011).

established standards controlling the right to use deadly force in same or similar circumstances,[2] as a direct and proximate result of which B.C. has been rendered paraplegic.[3]

4.      Plaintiffs further assert that Defendants are liable for the violation of Plaintiffs' civil rights in failing to adequately train, supervise and control the actions of Defendant Cohen, a St. Louis Metropolitan Police Department Officer, which gave rise to his actions at the time of the incident made the basis of this suit.[4] Officer Cohen's actions giving rise to this suit are merely part of an established pattern of shootings of young Black males by St. Louis police officers to which the City has improperly and inadequately responded, so as to constitute a *de facto* policy of acquiescing to conduct of its police officers which was insufficient to protect the rights of its citizens and which was likely to result in constitutional violations; and, further, which put

---

[2] *See Ellison v. Lesher,* No. 13-3371, 2015 WL 4645667, at *5, __ F.3d __, (8th Cir. Aug. 6, 2015)("Since the 1985 decision in *Tennessee v. Garner,* "officers have been on notice that they may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others." *Craighead v. Lee,* 399 F.3d 954, 962 (8th Cir.2005).").

[3] *See Pitts v. City of Cuba,* 913 F. Supp. 2d 688, 727 (E.D. Mo. 2012)("Generally, a plaintiff alleges sufficient injuries where there is some long-term or permanent injury, or at least objective medical evidence to support the plaintiff's claim of injury. *See, e.g., Cook v. City of Bella Villa,* 582 F.3d 840 (8th Cir.2009).").

[4] *See Holmes v. Slay,* No. 4:12CV2333 HEA, 2015 WL 1411866, at *11, __ F.Supp.3d __, (E.D. Mo. Mar. 26, 2015)("To establish a failure to train claim, a plaintiff must show that the defendant had notice its procedures were inadequate and likely to result in a violation of constitutional rights. See *City of Canton,* 489 U.S. at 396 (O'Connor, J., concurring). A failure to train claim may also arise from a pattern of constitutional violations that put the municipality on notice its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens. *Id.* at 397, 109 S.Ct. 1197 (O'Connor, J., concurring); see also *Thelma D. ex rel. Delores A. v. Board of Educ. of City of St. Louis,* 934 F.2d 929, 934–35 (8th Cir.1991)."). *See also Womack v. Bradshaw,* 49 F. Supp. 3d 624, 636 (W.D. Mo. 2014) *aff'd,* No. 14-3326, 2015 WL 4488636, __ Fed. Appx. __ , (8th Cir. July 24, 2015).("A municipality may be held liable for failing to investigate claims of excessive force if a plaintiff demonstrates that (1) the municipality employed a custom or policy of ignoring such claims, and (2) said custom or policy was the 'moving force [behind] the constitutional violation.' *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir.1999) (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (alterations in original).").

Defendatns on actual or constructive notice that its police officers' responses to  commonly

recurring situations were, as in this instance, insufficient to protect the rights of its citizens.

5.     In addition, Plaintiffs assert state law-based claims of assault and battery against

Defendants,[5] over which claims this Court may properly exercise its supplemental jurisdiction,

pursuant to 28 U.S.C. § 1367(a).[6]

---

[5] "The law on the issue of assault and battery by an officer effecting an arrest was stated by this court in *State v. Hines,* 148 Mo.App. 289, 128 S.W. 248 (1910)…

> *An officer clothed with the warrant of law is answerable in damages as for assault and battery only when in the performance of his duty in making the arrest he uses more force than is reasonably necessary for its accomplishment. This being true, it devolves upon the plaintiff to prove… that he used more force thereabout than was reasonably necessary to effect the arrest.*

*Id.* at 248–249 (citations omitted [in orig.]) (emphasis ours). Consistent with the holding in *Hines,* the supreme court stated in *Manson v. Wabash Railroad Company,* 338 S.W.2d 54,61 (Mo. banc 1960): '[T]he officer in the first instance is the judge of the manner and means to be taken in making an arrest. Unless a plaintiff can show that unnecessary force was used, courts will protect the officer.' [citing 6 C.J.S. *Assault and Battery* § 23(1) ].

Whether or not the arrest is made pursuant to a warrant, a plaintiff asserting that he was battered in the course of an arrest must prove that the officer used unreasonable force in effecting it."
*Neal v. Helbling,* 726 S.W.2d 483, 487 (Mo. Ct. App. 1987). *See also Schoettle v. Jefferson Cnty.,* 788 F.3d 855, 861 (8th Cir. 2015)("Under Missouri law, a law enforcement officer 'is answerable in damages as for assault and battery only when in the performance of his duty in making the arrest he uses more force than is reasonably necessary for its accomplishment.' *Neal v. Helbling,* 726 S.W.2d 483, 487 (Mo.Ct.App.1987) (quoting *State v. Hines,* 148 Mo.App. 289, 128 S.W. 248, 248–49 (1910)).").

[6] *See Williams v. City of Marston,* 857 F. Supp. 2d 852, 861 (E.D. Mo. 2012)("[A] 'federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one place.' *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 349 (1988). The court's supplemental jurisdiction over state law claims arises under 28 U.S.C. § 1367(a). This statute provides that 'the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within the [court's] original jurisdiction.' 28 U.S.C. § 1367(a)."). *See also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters,* 645 F.3d 954, 963-64 (8th Cir. 2011)("Once original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory, absent certain statutory exceptions. *See Southern Council of Indus. Workers v. Ford,* 83 F.3d 966, 968 (8th Cir.1996) (per curiam); *McLaurin v. Prater,* 30 F.3d 982, 985 (8th Cir.1994).").

6.    Finally, Plaintiffs assert state law based claims for acts committed in bad faith or with malice,[7] to wit shooting a teenager presenting no immediate threat of harm to the arresting officers, with conscious and reckless indifference to the probable likelihood and actual fact of causing him catastrophic and crippling permanent injury.

7.    In addition to B.C.'s Fourth Amendment excessive force claims under 42 U.S.C. § 1983, Plaintiff Antoinette Liggins, the natural mother and custodial parent of her minor son, B.C., has standing to assert and hereby asserts her own claims, pursuant to § 1983, for violations of her constitutional, fundamental liberty interest in the care of her child and her due process right to associate with her child,[8] both of which having been severely compromised due to B.C.'s being rendered a paraplegic as a result of his being shot. She also has the right to assert and hereby does assert a claim for herself for loss of his services during minority and his expenses for treatment

---

[7] *See Davis v. White,* No. 14-1722, 2015 WL 4528367, at *3, __ F.3d __, (8th Cir. July 28, 2015) ("[T]he district court erred in granting summary judgment on these claims because the court failed to consider the well-established principle that official immunity 'does not apply to discretionary acts done in bad faith or with malice.' *Blue v. Harrah's North Kan. City, LLC,* 170 S.W.3d 466, 479 (Mo.App.2005), citing *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 446 (Mo. banc 1986)… 'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.' *Adolf,* 706 S.W.2d at 447 (quotation omitted). 'Bad faith' means 'conscious wrongdoing' or 'breach of a known duty through some ulterior motive.' *Id.* (quotation omitted); and, *Estate of Snyder v. Julian,* 789 F.3d 883, 887 (8th Cir. 2015)("[O]fficial immunity is nonetheless unavailable to an officer who acts 'in bad faith or with malice,' where malice is defined to include 'reckless indifference to the rights of others.' *State ex. rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 446–47 (Mo.1986) (internal quotation omitted).").

[8] *See Doe A v. Special Sch. Dist. of St. Louis Cnty.,* 637 F. Supp. 1138, 1146 (E.D. Mo. 1986)("Parents have a fundamental liberty interest in the care, custody, and companionship of their children. *Stanley v. Illinois,* 405 U.S. 645, 651(1972); *Franz v. United States,* 707 F.2d 582, 594–95 (D.C.Cir.1983); *Ruffalo v. Civiletti,* 702 F.2d 710 (8th Cir.1983); *see also Fitzgerald v. Williamson,* 787 F.2d 403, 407 (8th Cir.1986)… The Due Process Clause also guarantees to parents the right to associate with their children, a right which may be deprived by the reckless killing of a child by a police officer. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1238 (7th Cir.1984); *Mattis v. Schnarr,* 502 F.2d 588 (8th Cir.1974); *see also Trujillo v. Board of County Commissioners,* 768 F.2d 1186 (10th Cir.1985); *Kelson v. City of Springfield,* 767 F.2d 651 (9th Cir.1985).").

until he reaches majority and on behalf of B.C. for pain and suffering, permanent injury, and impairment of earning capacity after majority he, in reasonable probability, will experience.[9]

8.      This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2). (See also Local Rule 3 – 2.07). The actions complained of and all of the facts surrounding such incident and its aftermath took place in this judicial district and division, the Plaintiffs are residents of this district and division, Michael Cohen was acting within the course and scope of his duties as an Officer of St Louis Metropolitan Police Department, a sub-division of the City of St. Louis, Missouri, ("City Police"), which is located entirely within this district and division, and all witnesses, documents, records and evidence, or the overwhelming majority thereof are located within this district and division.

## II.
## PARTIES

---

[9]  *See Crawford ex rel. Crawford v. Shop 'N Save Warehouse Foods, Inc.,* 91 S.W.3d 646, 653 (Mo. Ct. App. 2002) overruled [on unrelated grounds] by *Badahman v. Catering St. Louis,* 395 S.W.3d 29 (Mo. 2013)(" 'At common law, an injury to a child gave rise to two causes of action: one on behalf of the child for pain and suffering, permanent injury, and impairment of earning capacity after majority; the other on behalf of the parents for loss of services during minority and expenses for treatment.' *Boley v. Knowles,* 905 S.W.2d 86, 88 (Mo. banc 1995). However, now, the cause of action for medical expenses is vested jointly in the parents and the child, but there may be no double recovery. *Id.* at 90. Merely showing the 'possibility that medical expenses would be incurred for treatment which might be advised in the future without showing "even a probability that additional medical expenses would be incurred during ... minority" would not support a judgment.' *Wilson v. Lockwood,* 711 S.W.2d 545, 555 (Mo.App. W.D.1986) (*citing Kramer v. May Lumber Co.,* 432 S.W.2d 617, 622 (Mo.App.K.C.Dist.1968))."); and, *Kearbey by Kearbey v. Kinder,* 972 S.W.2d 575, 579, n. 4 (Mo. Ct. App. 1998)(" 'When a minor is injured because of another's fault, two causes of action arise: the minor's claim for damages for personal injuries and the parents' claim for loss of services and expenses necessarily incurred by them for the minor's medical treatment.' *Eaves,* 852 S.W.2d at 358. 'Obviously, "damages for care and loss of services" arising out of bodily injury suffered by a child are recoverable by the parents, not the child, unless the parents waive the claim.' *Id.* (quoting *Garrison v. Ryno,* 328 S.W.2d 557, 563–64 (Mo.1959)).").

9.      Plaintiff Antoinette Liggins is a citizen of the United States of America, domiciled in the County of St. Louis City, City of St. Louis, and State of Missouri.

10.     Defendant, the Board of Police of Commissioners is a public body politic, organized and existing pursuant to Missouri statute. The Board, comprised of Defendants Slay, Irwin, Batthe-Turner, Gray and Switzer, was solely responsible for the operation of the St. Louis Metropolitan Police Department (STLMPD) and the training, supervision, direction and control of the members, employees and agents of the St. Louis Metropolitan Police Department.

11.     The members of the Board of Police Commissioners are sued in their official capacities.

12.     Defendant Officer Michael Cohen is a sworn peace officer, certified and licensed as such in the State of Missouri, and employed as a police officer by the St. Louis Metropolitan Police Department.

13.     The member of the Board of Police Commissioners and all individuals identified in this Complaint as police officers, agents, employees, members or servants of the Board and of the St. Louis Metropolitan Police Department acted under color of law.

### III.
### UNDERLYING FACTS

14.     On best information and belief, on or about July 11, 2015, sixteen (16) year old B.C., whose picture is herein included, so that the Court can see the teenager Officer Cohen shot three times and rendered quadriplegic, (see Fig. 1),



Fig. 1

and his younger brother, 15 year old A.C., were at the playground near Hodiamont Avenue in

North St. Louis, Missouri.**[10]** B.C. and his brother are two African-American teenagers who reside

in the St. Louis area.  The two boys were at the playground, minding their own business. No

member of the City Police, including Officer Cohen or any other Defendant, was present at the

playground when B.C. and his brother arrived there and they did not observe the boys' actions

until they pulled up at the park.

---

[10]  See http://dailyhaze.com/name-released-of-st-louis-police-officer-who-shot-16-year-old-B.C.-claxton/;
admissible pursuant to Fed. R. Evid. 902(6). *See Sherman v. Sunsong Am., Inc.,* 485 F. Supp. 2d 1070,
1074 (D. Neb. 2007)("[P]rinted materials purporting to be periodicals are self-authenticating under
Rule 902(6)."); and, *Nestle Co. v. Chester's Mkt., Inc.,* 571 F. Supp. 763, 776 (D. Conn. 1983)
vacated, [on unrelated grounds] 609 F. Supp. 588 (D. Conn. 1985)("The media articles are self-
authenticating under F.R.E. 902… and are admissible as evidence of public perception and
usage.").

15.      B.C. does not now have and has never had a driver's license. He is enrolled in and regularly attends public school and is a "C average" student, passing all of his classes. He is not a member of a gang or engaged in any pattern of illegal activity. In about June 2009, he was with another boy, who stole an item from Macy's. The two boys were caught and taken to Juvenile Detention and his mother, Antoinette Liggins was called. She was allowed to take him home and no charges were ever filed.

16.      On the day before he was shot, B.C. was out playing in the street in front of his house and Officer Cohen drove by. The two waved to each other and Officer Cohen had a clear look at B.C.'s face as they waved, so he should have remembered the boy the next day.

17.      During the evening of the day he was shot, an adult female neighbor in the area called the City Police and stated she believed she saw the individual responsible for stealing her handgun on the preceding date, July 10, 2015.  Around 7:15 p.m., five officers from the City Police, including Officer Cohen, responded to the neighbor's call. Upon their arrival, the police officers encountered B.C. and his younger brother in the park, in addition to numerous other neighborhood children also playing in the boys' immediate vicinity. According to City Police reports, the officers allege that B.C. and his brother began fleeing the location when the police arrived; and, given the history of how police officers often treat young African-American males, that can hardly be claimed to constitute a surprising reaction. Moreover, the instant they began to flee significantly changed the way this case must be analyzed. The officers also allege that B.C. was carrying the very firearm that was reported stolen by the neighbor.  However, there has been no evidence publicly disclosed that B.C. was the suspect who allegedly stole the neighbor's handgun. And, even should it be the case that B.C. actually had such a weapon, mere possession thereof does not constitute a reasonable

justification for the City Police to shoot him, as a gun in the pocket or waistband constitutes no immediate threat to anybody. Moreover, upon the police officers' arrival, B.C. was not exhibiting, displaying, brandishing, pointing or discharging or attempting to discharge any weapon, even assuming he actually had it.

18.      Despite the City Police's vague allegations that B.C. was allegedly "carrying" the weapon, three eye-witnesses who were present during this incident were interviewed and only one stated that B.C. possessed a weapon at the time of the incident.[11] However all three report that B.C. never once aimed such a weapon or anything else at the police officers, inasmuch as B.C. began fleeing from the officers as soon as he saw them.  In fact, even St. Louis Metropolitan Police Chief Sam Dotson states that the surveillance camera in the playground did not provide a clear view of the suspect to determine whether B.C. was carrying a firearm.

19.      In stark contrast to the version of the surrounding facts proffered by the eyewitnesses, that B.C. was not wielding a weapon and *was* running in the opposite direction from which the officers were approaching, the officers allege that B.C. had a gun and either approached the three officers or pointed it at them as he ran. Both of such versions cannot possibly be true: either he was running away or he was approaching, but he could not physically be doing both. Supposedly based upon this contradictory alleged provocation, Officer Cohen gave no instructions or admonitions, instead immediately opened fire with his service weapon on B.C. Officer Cohen fired four times from his City Police-issued handgun into a crowded playground, striking B.C. three times.  Importantly, not one other officer, among the other four present, fired their weapons. One of the bullets struck

---

[11] The witness who claimed to see a weapon also stated that B.C. was "likely carrying the weapon because it was too large to place on his hip," which is not a characteristic of the handgun that was allegedly stolen.

B.C. in the spine, instantly paralyzing his legs. The shots also ruptured B.C.'s liver and split his pancreas. As a result of this incident, B.C. has been permanently rendered paraplegic.

20.     A non-police weapon was allegedly found at the scene, but police disclosures to date give no indication as to whether it was the gun reported missing. Moreover, there is no evidence of the gun's discharge during this incident and there is no showing that either boys had actual possession of it or any demonstrated intention to use it. As long ago as 1985, in *Tennessee v. Garner,* 471 U.S. 1, 6 (1985), the Supreme Court established that it is impermissible to use deadly force upon a fleeing suspect, without a probable cause belief that the suspect has just committed a felony and poses a threat to the safety of arresting officers or others. Here, any suggestion by the City Police that B.C. had just committed a felony and posed a threat is flatly contradicted by the eye-witnesses, as well as by the fact that no other officer felt sufficiently threatened to shoot. Moreover, witnesses present state that neither the other officers present, nor Officer Cohen ever told B.C. to get down on the ground, drop any weapon and put his hands in the air, or even spoke at all. Officer Cohen alone simply drew his service weapon and opened fire. Additionally, after the incident, B.C. has been charged with only pointing a gun at police and unlawful use of a weapon, not attempted murder of a police officer, assault on a police officer, or any other violent crime.

21.     All charges against B.C. have since been dropped.

22.     The Court should note that fifty-nine days before this incident, St. Louis local media reported[12] that Officer Cohen was involved in an incident when a twenty-five year old man pointed

---

[12]    See   http://www.stltoday.com/news/local/crime-and-courts/st-louis-man-pointed-rifle-at-officers-and-pulled-trigger/article_1aa93a54-3349-5a32-bc27-2a2c4402b475.html; also self-authenticating. See also n. 10, *supra.*

a high-powered rifle at him and another officer and actually pulled the trigger, but the rifle misfired and the man threw it down on the ground and fled. In that incident, the man was pursued, apprehended and arrested, with no police shots being fired. And, that suspect remains jailed in lieu of posting a $75,000 bond, having been charged with felony attempted assault on a police officer. Therefore, the City Police's story here makes no sense. Why was a teenager running away more threatening to Officer Cohen than a grown man actually aiming and pulling the trigger of a high-powered rifle? If that earlier incident, wherein the suspect also fled, did not provoke Officer Cohen to shoot, why did this one? Why were none of the other four officers present so provoked? Why wasn't B.C. charged with the same serious crime the earlier suspect was?[13]

23.     B.C. was rushed to the hospital, where the City Police placed him in custody. While in police custody, despite his being severely injured and paralyzed, the City Police refused to allow his own mother, Antoinette Liggins, to see him, even though there was no physical possibility whatsoever that a severely traumatized paraplegic could present a risk of flight or harm to anybody. One bullet had grazed his head, which required staples to close the resulting wound. Another bullet severely damaged his liver and kidneys, causing him to be on dialysis for two weeks. B.C.'s forearm was shattered and he has an intramedullary rod from elbow to wrist surgically implanted. He underwent a spinal fusion at the L1 vertebral interspace and he is now permanently paralyzed

---

[13] Mo. Ann. Stat. § 570.030 (West), at ¶ 1 and ¶ 5(3)(d), makes theft of or possession of a stolen firearm a class D felony. Attempt to assault another with intent to cause serious physical injury is a class B felony. Mo. Ann. Stat. § 565.050 (West). A class B felony carries a term of five-to-fifteen years; a class D felony carries a term of up to four years. Mo. Ann. Stat. § 558.011 (West). If B.C. either pointed the gun while approaching or while fleeing, why not the more severe charge?

from the waist down. He is scheduled to complete rehabilitation on or about September 15, 2015, but he will be significantly disabled and will require substantial aftercare for years, if not for life.

24.      B.C. posed no threat to the officers leading up to the time he was shot.  Even if the officers believed there was a threat, which is contradicted by the fact that four of the five officers did not perceive themselves to be so, eye-witnesses state that they could have arrested B.C., rather than shoot him three times.

25.      There was no need to shoot B.C. Officer Cohen's firing on B.C. was not based upon a rational fear for his life, but rather it was racially motivated, and done with malice and bad motive and reckless disregard for the rights and safety of his victim. After the shooting, witnesses report that Officer Cohen stood over the bleeding boy lying in the dirt and smiled at him as if he found the incident amusing. Additionally, Officer Cohen has been reported by reliable sources to have previously indicated his racial bias toward African-Americans as he has referred to African-Americans as "cockroaches" and bragged about fellow officers shooting "black St. Louisians."

26.      This was not an isolated incident. Over the last few years, there has been a pattern of City Police officers shooting un-armed young African-American males. And, the failure of the City to take steps to train, monitor, supervise and control such racially motivated constitutional rights violations amounts to a policy of conscious indifference to the rights of St. Louis African-Americans.

## IV.
## CAUSES OF ACTION

**A.  42 U.S.C. § Claims:**

27.     Plaintiff B.C., a minor, by and through his natural mother and custodial parent Antoinette

Liggins, asserts a claim, pursuant to 42 U.S.C. § 1983, against each Defendant for violation of his

clearly established Fourth Amendment right to be free to be free of the use of excessive force

during the course of his arrest, which violation would be clear from the perspective of a reasonable

police officer on the scene, viewing the objective facts surrounding B.C.'s being shot three times,

resulting in the severing of his spine and severe injuries to his liver and pancreas and resulting in

his permanent, partial paralysis at the tender age of sixteen. The claim against Defendant Michael

Cohen is based upon his violation of B.C.'s civil rights by using unjustifiably excessive and deadly

force during the course of his arrest. The claim against Defendant City of St. Louis, Board of

Police, Chief of Police Samuel Dotson, III, Mayor Francis Slay, Thomas J. Irwin, Bettye Batthe-

Turner, Richard H. Gray and Erwin Switzer is based upon its failure to adequately train, supervise

and control the actions of Defendant Cohen, a St. Louis Metropolitan Police Department Officer,

which gave rise to his actions at the time of the incident made the basis of this suit. Officer Cohen's

actions giving rise to this suit are merely part of an established pattern of shootings of young Black

males by St. Louis police officers to which the City has improperly and inadequately responded,

so as to constitute a *de facto* policy of acquiescing to conduct of its police officers which was

insufficient to protect the rights of its citizens and which was likely to result in constitutional

violations; and, further, which put the City on actual or constructive notice that its police officers'

responses to commonly recurring situations were, as in this instance, insufficient to protect the rights of its citizens.

28.     Plaintiff Antoinette Liggins, the natural mother and custodial parent of B.C., a minor, asserts the foregoing claim for and on behalf of B.C. and additionally, individually, asserts claims pursuant to 42 U.S.C. § 1983 against each Defendant for violations of her constitutional, fundamental liberty interest in the care of her child and her due process right to associate with her child, both of which having been severely compromised due to B.C.'s being rendered a quadriplegic as a result of his being shot. She also has the right to assert and hereby does assert a claim for herself for loss of his services during minority and his expenses for treatment until he reaches majority.

### B. Supplemental Claims Pursuant to Applicable Missouri State Common Law:

29.     Plaintiffs further assert Missouri common law-based claims of assault and battery against each Defendant based upon assault and battery. The claim against Defendant Cohen is based upon his use of more force than was reasonably necessary to effect B.C.'s arrest.[14] The claim against Defendant City of St. Louis is based upon its failure to adequately train, supervise and control Office Cohen, which omissions directly gave rise to his use of clearly excessive force during the incident at issue.[15]

---

[14] *See State v. Nunes,* 546 S.W.2d 759, 763 (Mo. Ct. App. 1977)("A police officer is authorized to use all necessary force to effect the arrest if the arrestee flees or forcibly resists after notification that the officer intends to arrest. s 544.190, R.S.Mo 1969. He may use only the force he reasonably believes necessary (State v. Nolan, 354 Mo. 980, 192 S.W.2d 1016, 1020(7—9) (1946)) and while the use of unreasonable force may not void the arrest, it may subject the officer to civil or criminal liability. City of Gallatin ex rel. Dixon v. Murphy, 217 S.W.2d 400, 403(1—4) (Mo.App.1949).").

[15] *See Duvall v. Lawrence,* 86 S.W.3d 74, 85 (Mo. Ct. App. 2002)(viable vicarious liability claim arising out of assault and battery must have factual basis).

30.     Plaintiffs further assert Missouri common law-based claims that Defendants committed in bad faith or with malice, to wit shooting a teenager presenting no immediate threat of harm to the arresting officers, with conscious and reckless indifference to the probable likelihood and actual fact of causing him catastrophic and crippling permanent injury. The claim against Defendant Cohen is based upon his shooting of B.C. in circumstances which render that act to be clearly excessive and to amount to conscious and reckless disregard of B.C.'s civil rights. The claim against Defendant City of St. Louis is based upon its failure to adequately train, supervise and control Office Cohen, such that these omissions gave rise to his propensity for such actions during the incident made the basis of this suit.

## V.
## DAMAGES

31.     Upon trial of this case by a jury of the Parties' peers, Plaintiffs will prove by a preponderance of the evidence that they have sustained damages, including but not limited to the following, arising directly and proximately from the tortious acts of the Defendants:

1)  Future economic losses, including diminished earning capacity and the costs of training, education and accommodation of B.C.'s permanent paraplegia;

2)  Past medical expenses and future medical expenses which in reasonable medical probability will be incurred in B.C.'s care and treatment for permanent paraplegia;

3)  Past and future conscious physical pain and suffering, mental anguish, torment, disfigurement, physical impairment, loss of good health and freedom from pain, want and worry;

4)  Loss of B.C.'s past and future services during his minority; and, loss of contributions which B.C. would in reasonable probability have made to his natural mother, had he not been rendered permanently paraplegic;

5)  Pre- and post-judgment interest at the highest prevailing rate, as permitted by applicable and controlling law;

6) Punitive Damages, and

7) Attorney's fees, expert fees and related costs of asserting the instant claims, to the extent permitted by 42 U.S.C. § 1988(b) and (c).[16]

## VI.
## PRAYER FOR RELIEF

32.    Plaintiffs pray that they have and recover judgment of and from the Defendants damages in an amount in excess of the minimum jurisdictional limits of this Court and prejudgment interest thereupon at the legal rate, costs of court, attorney's fees, expert fees and related expenses of pursuing the causes of action asserted herein, to the extent authorized by 42 U.S.C. § 1988(b) and (c), and for such other relief, general or special, at law or in equity, to which the Plaintiffs may show themselves justly entitled.

## VII.
## DEMAND FOR JURY TRIAL

33.    Plaintiffs respectfully assert their right, pursuant to the Seventh Amendment to the United States Constitution, for a jury trial on all issues of fact and law to which they are entitled. Such jury demand is timely and properly made pursuant to Fed. R. Civ. P. 38(a) and (b)(1) and Local Rule 38 – 2.04 of this Court.

---

[16] *See Venegas v. Mitchell,* 495 U.S. 82, 86 (1990)

Dated: March 25, 2016

Respectfully submitted,

GORI, JULIAN & ASSOCIATES, PC.

BY:  _/s/_ _D. Todd Mathews_____
D. Todd Mathews Mo Bar#52502
156 N. Main Street
Edwardsville, IL 62025
618-659-9833
todd@goriljulianlaw.com
**ATTORNEY FOR PLAINTIFFS**